Morning, Your Honor. This is George McGill for the appellate, Incon. May it please the Court. We are here, that is the main thrust of the appeal, is to see if we can get still another expression, judicial expression of what we think is now very clearly the law. It was put by a pretty good source, former Chief Justice Rehnquist in the Atkinson Trading v. Shirley case from Arizona. And he said, Montana's second exception grants Indian tribes nothing, nothing beyond what is necessary to protect after some precursors, one of which was Montana v. King. Where Judge Thomas noted the exception applies when hold otherwise would threaten the right of reservation Indians to make their own laws and to be ruled by them. That occurred as early as 1999. Then in the Ford Motor case, Judge Rawlinson got it right. The first time I believe in the, certainly in the history of the Ninth Circuit and maybe anywhere, where the exception has been denominated, has been called, characterized, the tribal self-government exception. We respectfully think that's what it is. Let me ask you this. As I see it, the precise point is not whether there's jurisdiction over you, but whether you have to exhaust this argument in the tribal court rather than in the district court. What's the problem with raising all these arguments, Judge Rawlinson's great opinion and other things, raising it to the tribal court first? Chances, I mean, you might win. Well, hypothetically. And if you don't, then you come to district court. Yeah, that's very true. We'd just like to cut it off before that because we think it's an unnecessary bypass to the tribal court. We don't think the tribal court has jurisdiction. There's no jurisdiction. Well, you may be right, but don't they get the first shot at it? There is case authority that they do get the first shot at it. That's right. Of course, we've argued that numerous exceptions are applicable. We think it's plain that there's no jurisdiction in the tribal court. But what we really are trying to establish is that this exception is so limited that this case doesn't fit. The exception as to safety has been so curtailed by a number of cases. The expression is in Judge Rawlinson's opinion in Ford Motor and others. County of Lewis, the Red Wolf, Burlington Red Wolf. Safety just doesn't cut it. Safety is not enough. Didn't we actually send the case back for exhaustion ultimately in Ford Motor? I thought that there was an en banc. My memory is a little fuzzy on this. But I thought there was an en banc request, and then we ended up sending it back for tribal exhaustion. No, Your Honor. I believe that the ultimate determination on the exhaustion issue was that it was not necessary because there was no jurisdiction. Towards the end of your opinion, I believe you'll find that to be the case. Right. I remember the opinion, but I just don't remember what happened after the opinion. I thought that Judge Canby called it en banc. Well, Judge Canby is the authority in this area. I mean, that's just a lot of cases, and that may have been a different case. But I still think I was right. There's no question in my mind that you were right. It was two to one, if I recall, and I was part of the two. So I think that we both think it was right. I have sort of a recollection that we required exhaustion first, and then came back after the tribe did whatever it did, and then we set it straight. That's my recollection. Let me take a slightly different tact on that same point. Since the exception has a provision within it that allows the tribe to exercise jurisdiction where health or welfare of the tribe would be threatened or have some kind of significant impact, wouldn't the tribe be in the best position to make initial factual determinations on that point? On the safety issue? In tribal court? Well, of course, that's the heart of what we're here about, Your Honor. We don't think that the exception encompasses health and safety, properly read, and that's the thrust of this appeal. There are quite a number of cases. As a matter of fact, Ford Motor was one of them. Let's see. Well, I can't find the exact quote, but the point is that safety is not enough to come within the exception. I was just going to say it has been described, the second exception, as some kind of impact on the health or welfare of the tribe. Earlier cases, earlier cases, but in Ford Motor. I think that's limited now. Yes, I do. That's why we're here. The quote from Judge Wallinson's opinion in Ford Motor, although the tribe does have an interest in protecting the lives of the police officers on tribal roads, unfortunately that interest does not fit within the parameters of the self-government Montana exception. That exception has been narrowly defined as encompassing events that interfere with the tribe's ability to enact laws or be governed by its own laws, following from Justice Scalia's opinion in Hicks. Subsequently, of course, after Plains Commerce Bank, where Chief Justice Roberts said that this exception is so narrow that it must imperil the subsistence of the tribal community. Imperil the subsistence. That's following a commentary by Cohen, along with Judge Camby, the leading expert in this field. And so to try to answer your question, Your Honor, we just don't think it extends to health and safety at all. County of Lewis, a block decision, certainly would indicate that, that it is to be restricted and narrowly interpreted to pertain to tribal self-government and internal affairs and not to health and safety at all. Now I remember this case. It went to the tribal court originally. Yes. Then it came to the district court. So it's kind of a different posture. We weren't deciding the initial jurisdiction of the tribe, but whether it should be taken out of federal court and go to the tribal court. I think we determined that exhaustion had been sufficient. Right, right. That's what they're saying you should do first. You should go and make your pitch to the tribal court, and then if you win, terrific. If you don't, you've got Judge Rawlinson's opinion to save your bacon. Yeah. Well, we just think that the law should be that this kind of appeal to safety is just not sufficient. And under the facts, here we have a situation where we're told that we're the source of this contamination. They point to 47, a little bit of hyperbole here, 47 tons of ash. That had all been removed, and the EPA approved the removal. The so-called above-ground storage tank was cleaned and blessed by the EPA. All of that is in the record in the 82-page EPA report as of September of 08. Yet now we're being told that these very items – excuse me, I'm dehydrated. These very items – Want to get some water? Yeah, please. Yes, I would. These alleged contaminating items have been blessed by the EPA. It's all there in the record. They say there are underground injection wells. There aren't any. Never have been on this property. The whole thing has been overblown, and, of course, our position is it's just an easy effort to create jurisdiction when none should exist. That's really what we're trying to establish, that the health and safety claim here is spurious factually, and it's wrong legally. Even legally, if we assume that the exception is now very narrow, necessary to protect tribal self-government, or however it's phrased, even assuming that, wouldn't it be better from a factual point of view to have these issues develop before the tribal court, before coming here? Well, we're not certain we can get a fair hearing before the tribal court. I hate to put it that bluntly, and I respect the Supreme Court says we've got to give these tribal courts an opportunity, of course, but we have a situation here where we think the deck is kind of stacked. But they don't get the last word. The point is you can come back after you've exhausted it. You can come back and we can set it straight if it deserves to be set straight. Well, that's a decision. That's a decision. That's up to you folks, not to us. But we feel so strongly about it that we brought it here. We think that should be the law, and in the face of this record particularly, because the record is thin or nonexistent as to this alleged pollution contamination threat. Do you want to reserve some time for rebuttal? Yes. Three minutes maybe. Thank you. Please. Good morning. Good morning. My name is Scott Fowle. It's my pleasure to represent the Rincon Band. Together today in the court with me is Lori Gonzalez, a member of the Tribal Council, and Denise Walsh, the Attorney General for the tribe, and my co-counsel in this case, Karen Graham. I think I'll go right to Mr. McGill's points and the questions raised by this court. The threshold issue here is a question of exhaustion as to whether there's a colorable claim regarding tribal court jurisdiction such that this case should be heard in the first instance in the tribal court. This is the appeal of one of six cases, three filed in state court and three filed in federal court, where the RMCA and related plaintiffs have attempted to avoid the jurisdiction of the tribal court. And the law, he argued, well, that's the law it shouldn't be. Well, Elliott has expressed what the law is of the Ninth Circuit regarding the threshold question of whether things should be heard in the first instance. We look forward to the day, assuming he loses at the tribal court, makes his farmer union appeal to the federal court and loses at the district court, we look forward to the day of arguing in this court what are the parameters of the Montana Second Exception as it relates to threats of the tribal financial interests, the health and welfare of the tribe. And we think that critically distinguishes the Ford case from the facts here. Well, I'm doing my research here on the bench and I do see that that opinion was withdrawn and it was sent back. So my memory isn't totally gone. But my question is, our chore is to decide whether or not the tribal court plainly lacks jurisdiction. And so as the case law evolves and we get better informed as to what the definition of tribal governance is, if we can determine that this situation plainly does not fit into the Montana Exception, why should we require the futility of going back for exhaustion if we can confidently say that it doesn't fit? Well, that in fact has been articulated by the courts. One of the exceptions of tribal exhaustion is if the court can determine that the tribe's jurisdiction over the non-member defendant is plainly lacking. We don't think that you can find that situation here with these facts regarding this situation, especially in light of this court's rulings in both the Elliott case that talked about wildfire dam, the tribe's need to protect itself against devastation of wildfire and against pollution to the water table. But doesn't there have to be a cognizable threat of both of those? Well, and indeed there is. And to go exactly to the point, which is why this should be sent back to the tribal court, so that you can have a fully developed record. Even if you take some of the more catastrophic characterizations of the threshold for Montana II jurisdiction, where you're looking to whether we're averting catastrophic consequences or we're imperiling the subsistence of the tribe, you have those facts here. And we want the opportunity to have those facts developed. This is not hypothetical. Twice in the last decade, two massive wildfires have spread through the reservation. But that doesn't mean that these facts have established an imminent threat or even a cognizable threat of wildfire. We're confident we can establish those facts at the tribal court in terms of developing the record in this case. Because the facts will show that the Santa Ana winds swept across the plaintiff's property. They weren't approved by anybody. Not approved by the county, not approved by the tribe, not approved by anybody except the plaintiffs themselves. These diesel tanks and these wood pallets and all these things that create this imminent fire hazard immediately adjacent to the tribe's main source of resource. And in fact, in that wildfire, people couldn't evacuate to the north. They couldn't evacuate to the south. So they evacuated to the tribal casino that had the wildfire exploding across their property onto the tribe's reservation. Can I ask you, where is the limiting principle there? Aren't you articulating a rule that essentially would give tribal court jurisdiction over all non-Indian fee land on the reservation? To the extent that the regulating activity that will limit the ability of those activities to imperil the subsistence of the tribe, yes. That's what we are arguing and that's what we are contending and that's what we believe exists in the Montana II exception. The Ford case, even if it weren't withdrawn, is a completely different set of facts. It was a tribal member suing a manufacturer of an automobile for product's liability in tribal court. And the court properly said, this generic concern of protecting the safety of the tribe's police from defective automobiles is not sufficient to trigger Montana II jurisdiction. Here we're talking about imminent threats of wildfire to the tribe's facility. We lost 60 structures in that last wildfire. The tribe has gone to enormous measures since then in terms of developing a state-of-the-art fire department and yet we still have this unregulated activity occurring immediately across the street from the tribe's main resource. And Mr. McGill opened the door when he talked about where we are with things with water. When this case was first litigated, we were looking at modeling and showing what the threats could be. Well, the facts have now developed to where we actually have a pollution plume that is migrating from that property onto the tribe's reservation, trespass onto the tribe's reservation. So why couldn't you litigate those matters in federal district court? We could and we will. But the doctrine of the Supreme Court in terms of exhaustion of tribal remedies says that when you're talking about the validity of tribal ordinances and the question of tribal jurisdiction, it should be heard in the first instance in tribal court. Not the validity of tribal ordinances. It's whether the tribe has the ability to govern itself. The Supreme Court has really backtracked in terms of tribal jurisdiction and the Montana exception is an exception and exceptions are to be construed narrowly. So now that we have additional cases telling us that the exception is to be construed narrowly, I have some concern that your argument is that you're arguing for a broad interpretation of tribal jurisdiction and the Supreme Court has instructed us to have a narrow interpretation of tribal jurisdiction. But no, we're not arguing that. We're contending that the exercise of tribal jurisdiction as we're looking to apply it here remains within the parameters set by the Supreme Court and the progeny of those Supreme Court cases. And if you look factually at those distinctions, frankly I think it's fairly easy when you have a member trying to hail a non-tribal entity into tribal court because they'd rather litigate it there than in state court. Here you're talking about the validity of a tribal ordinance. What Mr. McGill's clients refuse to do is comply with a simple tribal ordinance that says if you're going to do any development on the land, you submit that plan to the tribal government and that tribal government passes on whether there's any environmental dangers based on what is being requested. But you're trying to enforce a tribal ordinance against someone who's not a member of the tribe and that's the problem that Montana identifies. The reach of tribal ordinances vis-à-vis non-tribal members is narrow. Correct. It is narrow. But here's a perfect example to where we're talking about extending that reach in a manner to avoid the catastrophic consequences that could happen to the tribe. Is it your argument that anytime there is a tribal ordinance involved, the Montana exception applies? No. So what would be the difference? The tribal ordinance would have to govern activity necessary to protect the tribe against imperiling the subsistence of the tribe and its interests. Let me rephrase that for just a moment. I think your argument is that where wildfire threat is the issue of the tribal ordinance, then Montana exception number two swallows the entire rule. No. This court dealt with and it cited in there, although he didn't cite the fact that it was en banc in reverse, he cited the Hoopa case. There the tribe was trying to say, you can't log on your land during a particular three weeks when we have ceremonial dances. There this court, before the remand for exhaustion reasons, said that is not an action necessary to protect the tribal government from catastrophic consequences. Here we're talking about applying the tribal ordinance in a way to protect the tribe against catastrophic consequences. If it's just a theoretical, if you're in the whole rainforest in Washington State and you're concerned about, you're saying, well this is about wildfire and therefore you're subject to your jurisdiction, the factual development there would probably be difficult to show that there's ever any serious threat of wildfire. Here we have two actual wildfires in the last 10 years, both of them spreading across the plaintiff's property and endangering the tribal's property. Same thing with the water. We're talking about pollution on the plaintiff's property that endangers the tribe's sole source of drinking and safe water. Let me ask you this. Suppose we agree with you that exhaustion is required. Why should the district judge have dismissed the complaint instead of just state it until things play out, given the possible statute of limitations issues? We think the allegation of a statute of limitations argument is spurious. What's really at issue here is the tribe's continuing exercise of jurisdiction over the subject land. To that extent, there's no statute of limitations problems. He does say, well I've got this contract claim. What are you to say? Well, it's a question of continuing jurisdiction. Go ahead. What's the problem with staying it instead of dismissing it? From a tribal interest point of view, frankly staying the case versus dismissing it is a little consequence to us because we believe that we go back to the district court under Farmers Union anyway. But here, the claim that he'll lose statute of limitations on a claim for damages is spurious because the extent to which tribal immunity applies to actions for damages, we don't see that claim having any viability. In terms of the ex parte exception to tribal immunity as to tribal officials, we think that there's color there and that that argument could then proceed. But hasn't the statute of limitations begun to run already? It's a continuing tort. It's running. It re-triggered today. Well, but the effect of a prior wrong doesn't constitute continuous running of the statute though. It's the act itself that causes the wrong. Well, but the relief that could be pursued at the district court would be prospective equitable relief in preventing the tribe from exercising jurisdiction going forward. But for damages purposes. But sovereign immunity prevents the claim against tribe or tribal officials for damages. I think I hear you say you don't really care one way or the other if it's stayed or dismissed. That's correct. Excuse me. Anything else? I do think that it behooves you to look at the factual circumstances when you're looking at these cases that say, well, Montana is to be read narrowly and we don't see a proper nexus between this claim and the Montana 2 jurisdiction. Because those cases generally turn on situations where a tribal member or in some situations even a non-tribal member tries to hail another tribal member into tribal court to resolve a private dispute against them. And those we think are properly decided under a narrow interpretation of the Montana 2 exception because they don't identify a critical tribal self-government interest at stake. But here we're talking about what reservation is there to govern if the whole reservation is charred to a crisp with a polluted water supply. And that was one of the concerns expressed by this court in the LA case. Thank you. Mr. McGill, you have three minutes and change left, I believe. Thank you, Your Honor. We give a hoot about whether it's stayed or dismissed. The very first thing that happened here was the tribe chilled a sale of this property for $1,900,000. That's in our complaint. That's our damage claim. So it's of more than passing significance whether it was stayed or dismissed, to us at least. Whose ox is being gored, I suppose. But from our vantage point, that's a very important issue, the stay or dismissal issue. We think that if you look at the factual record here, and we've set forth in the excerpts declarations, such as by the longtime fire chief in Carlsbad, that there was no threat from this property of wildfire at all after the EPA cleanup. And it's just not true what has been said here about the wildfire threat. Same applies to the contamination. If you look at the declarations that are in the record, there is no source from this property. The tribe has a burden of proof on that, and they haven't carried it at all in this record. I'd like to refer to one case. This is not in our brief. It's called the Town Pump case. It involved a toxic discharge, and there was a finding by Montana District Court that there was no jurisdiction because this toxic discharge from a gas station was insufficient to create the kind of health risk that is encompassed under this Montana second exception. That case is reported at 394 Fed Appendix 425. 394 what? Fed Appendix. Oh, that's District Court. Is it a memdisco, memorandum disposition of our court? No, it was not a memorandum. Is it a District Court decision?  We cite it under, of course, Rule 36B because it was decided recently. It was 394 Fed Appendix what? 425. Okay. Thank you. 2010 Westlaw 3469578. Discharge on the Blackfeet Nation Reservation, and that did not pass muster under this exception. But we just think that under the law, as the exception has been narrowed, this doesn't apply, even if the facts fit it, and the facts do not. They have not shown any threat, any viable threat to either the water supply or fire and safety emanating from this doneus we call it, doneus property. It just isn't there. Why isn't the result of the prior fire enough to raise the issue about the threat to the tribal self-government? Well, the result of the prior fire is that the property was completely cleaned up at the expense of Appellant and Mr. Doneus, and the EPA came in in the summer of 2008, supervised the cleanup, found there were no environmental threats whatsoever. It's an 82-page closure by the EPA in September of 2008. There's no showing of any threats since then. The tribe would have, the Peles would have the court just disregard that EPA 82-page report. Well, they sampled the drinking water, no contamination. It's a completely clear report in the EPA closure. I guess my time is up. I'd like to. Right, it is up. Thank you, Mr. McGill. Could I just refer to one? This is a decision that has come down in January of this year. It's a district court in Arizona. Judge says subjecting non-Indians to the jurisdiction of a tribal court without their consent would subject them to an entity outside the Constitution. Why don't you give us the citation? Lucy has a form to jot that down on. If you would do that, we'd appreciate it. The last line, government with the consent of the governed is everything in America. Thank you. The case just argued is submitted. Good morning. Do you have a gum sheet? Just jot down the cite for Lucy and give it to Mr. Crowell.  The case just argued is submitted. 075002. In the related case, United States v. Mendoza, each side will have 20 minutes.
judges: Tunheim, Silverman, Rawlinson